Jason E. PEARL, Trustee in Bankruptcy of Herman Goldberg, a.k.a. Hymy Goldberg, Petitioner-Appellant,

v.

Herman GOLDBERG, Bankrupt, Respondent-Appellee.

No. 189, Docket 27212.

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1962.

Decided March 28, 1962.

Jason E. Pearl, New Britain, Conn., petitioner-appellant, pro se.

Harry L. Nair, Hartford, Conn. (Jonathan S. Cohen, Hartford, Conn., and Israel Rosenzweig, New Britain, Conn., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Appellee, Herman Goldberg, having been adjudged a bankrupt on his volun-tary petition, the bankruptcy referee granted the trustee's petition to require him to transfer his interest in a life insurance policy to the trustee. This policy, which was called a "Limited Payment Annual Dividend Endowment Policy," was issued in 1924 by the Mutual Trust Life Insurance Company. Originally the beneficiary was appellee's sister, but he reserved the right to change the beneficiary on the policy; and he has exercised that right twice—once to make his wife the beneficiary, and a second time on her death to name his son beneficiary. The son remains as beneficiary, subject, of course, to appellee's right to make future changes. The policy has a face value of $5,000 and matures as an endowment when the insured reaches age 85; at the time of the adjudication by the referee, the cash surrender value of the policy was $3,266.32. On petition for review Judge Anderson reversed the referee's order to hold that the cash surrender value of the policy was exempt property under Conn.G.S. § 38–161 (1958), and thus beyond the reach of the trustee by virtue of § 6 of the Bankruptcy Act, 11 U.S.C. § 24. We affirm that holding.

■ The Bankruptcy Act vests the trustee with title to the cash surrender value of life insurance policies held by the bankrupt if he possesses an absolute power to change the beneficiary, regardless of the person named beneficiary at the time of bankruptcy. Bankruptcy Act § 70a, 11 U.S.C. § 110(a); Cohen v. Samuels, 245 U.S. 50, 38 S.Ct. 36, 62 L.Ed. 143. This rule, however, is subject to the important qualification that the state of the bankrupt's domicile may exempt this property, placing it beyond the trustee's reach. Bankruptcy Act, § 6, 11 U.S.C. § 24; Holden v. Stratton, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018; In re Messinger, 2 Cir., 29 F.2d 158, 68 A.L.R. 1205, certiorari denied Reilly v. Messinger, 279 U.S. 855, 49 S.Ct. 351, 73 L.Ed. 996. Since almost all states exempt the cash surrender value of policies reserving the power to change the beneficiary if that power has not been ex-

**612**

ercised for the benefit of the bankrupt,[1] the rule of Cohen v. Samuels, supra, 245 U.S. 50, 38 S.Ct. 36, 62 L.Ed. 143, is substantially qualified in practice. If Connecticut has enacted a statute exempting appellee's policy, then the decision of the district court must be affirmed.

Conn.G.S. § 38–161, upon which Judge Anderson relied, states in pertinent part: "The beneficiary of any life insurance policy, being a person other than the insured, whether named as beneficiary in the original policy or subsequently named as beneficiary in accordance with the terms of such policy, shall be entitled to the proceeds of such policy as against the representatives or creditors of the insured, unless such policy was procured or such designation of a beneficiary was made with intent, express or implied, to defraud creditors."[2] The trustee-appellant, while apparently accepting Judge Anderson's conclusion that § 38–161 is an exemption statute, argues that it applies only to payments to the beneficiary made after the death of the insured, not to the cash surrender value of a policy when the insured is still living. These contentions require an examination of the statutory background.

In In re Messinger, supra, 2 Cir., 29 F.2d 158, this court held that § 55a of the New York Insurance Law was an exemption statute within the meaning of § 6 of the Bankruptcy Act, 11 U.S.C. § 24, and that it placed the cash surrender value of policies made payable to the bankrupt's wife beyond the trustee's reach. Section 55a stated that, if a person took out a life insurance policy naming anyone but himself as beneficiary, the beneficiary thereof was entitled to the "proceeds and avails" of the policy as against the creditors of the maker of the policy, even if the latter retained the right to change the beneficiary. We reached this construction even though the statute (1) did not explicitly grant an exemption and (2) by its terms applied even when the power to change the beneficiary was reserved, because we concluded that the statute manifested an intent on the part of New York to exempt "the 'proceeds and avails,' so far as beneficiaries, other than the bankrupt, may have an interest in the policy." 2 Cir., 29 F.2d 158, 160.

This case was followed shortly by In re Reiter, 2 Cir., 58 F.2d 631, certiorari denied Hanrahan v. Reiter, 287 U.S. 652, 53 S.Ct. 116, 77 L.Ed. 563. Reiter, who at the time of bankruptcy was domiciled in Connecticut, had taken out twenty-three insurance policies on his life. In some his wife was designated beneficiary, in others the wife and other relatives were included, in some just other relatives, and in some a firm in which he was interested. All contained provisions

1. See Reisenfeld, Life Insurance and Creditors' Remedies in the United States, 4 U.C.L.A.L.Rev. 583, 615 (1957).

2. The statute continues: "If any such policy was procured or any such designation made with the intent, express or implied, to defraud creditors, the proceeds thereof shall become a part of the estate of the insured, and the executor or administrator of such estate shall collect such insurance and use the proceeds thereof so far as it is required for the expenses of administration and the payment of debts and pay over the balance, if any, to the beneficiary of such policy. If any premiums paid on such insurance policy were paid with the intent, express or implied, to defraud creditors, the amount of the premiums so paid, with interest thereon, shall become a part of

the estate and shall be dealt with as above provided. The company issuing such policy shall be discharged of all liability thereunder by payment of the proceeds in accordance with the terms of the policy unless, before such payment, the company has received written notice, from a creditor, executor or administrator of the insured, that such policy was procured or premiums were paid thereon with intent to defraud creditors; but such notice may be disregarded by such company unless proper legal proceedings to enforce such claim are begun within three months from the giving of such notice. This section shall apply to any policy of insurance issued before July 1, 1933, but not to policies which matured by the death of the insured before July 1, 1933."

permitting the insured to change the beneficiaries at will. The referee ordered Reiter to turn over the cash proceeds of the policies to the trustee, and the district court affirmed the order.

In re Reiter, supra, 2 Cir., 58 F.2d 631, came to this court in 1932. At that time the only pertinent provision of Connecticut law was § 13, c. 58, of the Conn. Public Acts of 1929, which provided, *inter alia*, that "The proceeds of any policy of life insurance expressed to be for the benefit of a married woman, or assigned to her or in trust for her, shall be her sole and separate estate." We held then that, despite the absence of any explicit language of exemption, or even mention of creditors, this statute was an exemption act. We also construed the statute as applying where an absolute power to revoke was retained, for, as we pointed out there, to adopt any other construction would be to restrict the statute's operation to a very narrow field indeed. 2 Cir., 58 F.2d 631, 632–633. Having thus construed the Connecticut statute we held that the referee's order must be reversed in so far as it applied to policies in which the wife was the named beneficiary. As the Connecticut exemption act applied only to the wife, we affirmed the remainder of the order for the turnover of the other policies.

■ ■ Shortly after the decision in In re Reiter, supra, 2 Cir., 58 F.2d 631, the Connecticut legislature enacted the statute presently in question, Conn.G.S. § 1095b (Cum.Supp.1933), now Conn. G.S. § 38–161 (1958). The purpose of this section was to extend to all beneficiaries the protection which § 13 had granted to wives. Allen v. Home Nat. Bank, 120 Conn. 306, 180 A. 498, 501 (1935).[3] In view of this construction by the Connecticut Supreme Court of Errors, and the fact that passage of this statute followed close upon the Reiter litigation, we must conclude that § 38–161 was intended to be an exemption statute. Thus the only question remaining is whether or not § 38–161 applies to the policy in dispute in this case. The trustee points to two primary factors which, he tells us, require a conclusion that it does not: (1) that the policy here has a limited endowment feature, and thus is not a "life insurance" policy; and (2) that the statute speaks only of the "proceeds" of the policy, which, he contends, must mean only its matured value, not its cash surrender value. We find neither of these considerations persuasive.

There is no magic in the word "proceeds" which would limit it to amounts payable after the insured's death. The identical word was employed in § 13; yet we construed that section as exempting the cash surrender value of the policies involved. In re Reiter, supra, 2 Cir., 58 F.2d 631. The language of § 38–161 is unequivocal: "The beneficiary * * * shall be entitled to the proceeds of such policy as against the representatives or creditors of the insured * * *." Its function was to expand the protection granted by § 13. The legislative history suggests that the Connecticut legislature was aware of our prior interpretation of the Connecticut law, and one version of the bill that became § 38–161 was copied from the New York law interpreted in In re Messinger, supra, 2 Cir., 29 F.2d 158. Had the legislature intended § 38–161 to have so narrow a scope as the trustee urges, we believe it would have said so explicitly.

■ The final point for consideration is whether the limited endowment features of this policy, which is otherwise one of life insurance, take it outside the protection of § 38–161. This feature, which conditions the beneficiary's rights on the insured's dying before age 85— a not improbable event—seems less of a reason for excluding the policy from the protection of § 38–161 than the reserva-

---

**3.** There appears to be no Connecticut case which definitively resolves the problems of interpretation here presented, and hence we must resort to an independent examination of the statute's import. 1 Collier on Bankruptcy § 6.03 (14th Ed. 1961).

tion of the power to change beneficiaries. The general trend of the authorities has been to consider policies with combined life and endowment features as being within the reach of statutes exempting life insurance, even in cases where the endowment feature was a more significant aspect of the policy than here. E. g., In re Fogel, 7 Cir., 164 F.2d 214, certiorari denied Banks v. Fogel, 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141; In re Horwitz, D.C.W.D.N.Y., 3 F.Supp. 16; Fox v. Swartz, 235 Minn. 337, 51 N.W.2d 80, 30 A.L.R.2d 739. See also Reisenfeld, Life Insurance and Creditors' Remedies in the United States, 4 U.C.L.A.L.Rev. 583, 597 (1957). We find nothing in the language or policy of § 38–161 which would suggest that the statute was intended to exclude policies such as this. The policy is clearly one of life insurance, even though this feature may conceivably terminate at a later date. Therefore, we hold that it is exempt property by virtue of § 38–161.

Affirmed.