**In re Robert A. BOWER and Pamela S. Bower, Debtors.**

**Bankruptcy No. BK–S–97–25296–RCJ.**

United States Bankruptcy Court,
D. Nevada.

May 5, 1999.

Christopher G. Gellner, Las Vegas, NV, for plaintiff.

John P. Wanderer, Las Vegas, NV, for defendant.

## MEMORANDUM DECISION

ROBERT CLIVE JONES, Bankruptcy Judge.

Trustee, Yvette Weinstein's Motion for Summary Judgment Regarding the Life Insurance Policy Exemption came on for hearing in the above entitled court on November 2, 1998 at 1:30 p.m. Trustee appeared by and through counsel of record, Wanderer & Wanderer, by Brian D. Shapiro, Esq. and the Debtor appeared by and through counsel of record, Christopher G. Gellner, Esq.

The Court, having read and considered the Motion for Summary Judgment Regarding the Life Insurance Policy Exemption and finding that the notice given of the hearing on the Motion was adequate, and good cause appearing therefore, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment Regarding the Life Insurance Policy Exemption is **GRANTED IN PART.**

## FACTS

The Debtors, Robert and Pamela Bower, filed a Chapter 7 petition on July 14, 1997 to discharge indebtedness arising from a failed business in California. The Debtors owed nearly $100,000 after the bank had foreclosed on their business.

Between 1954 and 1986 the Debtors had either purchased or received a total of eight life insurance policies between them.

Seven of the eight policies, having a cash value of $133,263.76 and total annual premiums of $5,931.81, belong to Mr. Bower. The remaining policy, having a cash value of $1000.00 and a total premium of $29.00, belongs to Mrs. Bower.

On Schedule C, the Debtors claimed, among other things, an exemption on these policies under NEV.REV.STAT. § 21.090(1)(k); however, the one policy with an annual premium exceeding $1000.00 was only claimed partially exempt and the policy belonging to Mr. Bower from the Independent Order of Foresters (IOF) was not listed. The Debtors listed the IOF policy on an amended schedule C.

The Trustee filed this Motion for Summary Judgment Regarding the Life Insurance Exemptions contending that the exemption on each policy belongs only to the policy holder. The Trustee also contends that, in Mr. Bower's case, the policies should be aggregated and the Debtor entitled only to that portion of the money growing out of the life insurance that the statutorily proscribed maximum premium of $1,000.00 bears to the whole annual premium. In other words, the Debtor was entitled to 1000/5931.81 × 100, or 16.85% of the proceeds.

## ISSUE

1. Whether the formula proscribed by NEV.REV.STAT. § 21.090(1)(k) is applied to each policy individually or aggregated.

2. Whether a debtor is entitled to claim an exemption in a joint debtor's life insurance policy.

## DISCUSSION

■ In bankruptcy actions, the validity of a claimed state exemption is controlled by the applicable state law. *In re Goldman,* 70 F.3d 1028, 1029 (9th Cir. 1995). A bankruptcy court is bound by the state's rules of construction when interpreting a state statute. *Id.* The trustee has the burden of proving that the

exemption is improper. FED.R.BANKR.P. 4003(c).

It is the trustee's contention that Mr. Bower is entitled to an exemption of only 16.96% of the life insurance policies' cash value. Pursuant to NEV.REV.STAT. § 21.090(1)(k), Nevada provides for the exemption of life insurance as follows:

1. The following property is exempt from execution, except as otherwise specifically provided in this section:

(k) All money, benefits, privileges or immunities accruing or in any manner growing out of any life insurance, if the annual premium paid does not exceed $1,000. If the premium exceeds that amount, a similar exemption exists which bears the same proportion to the money, benefits, privileges and immunities so accruing or growing out of the insurance that the $1,000 bears to the whole annual premium paid.

NEV.REV.STAT. § 21.090(1)(k) (1997). The statute is silent as to whether this formula is applied to each policy individually or in the aggregate. Furthermore, the Nevada Supreme Court has not ruled on this issue.

■ When a decision turns upon applicable state law and the state's highest court has not decided the issue, a federal court must use its best judgment to ascertain how the state court would decide that issue. *General Motors Corp. v. Doupnik,* 1 F.3d 862, 865 (9th Cir.1993). However, the court may be aided by looking to well reasoned decisions from other jurisdictions. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). The court must interpret a statute consistent with legislative intent and the interpretation must be capable of obtaining a reasonable result. *Steward v. Steward,* 111 Nev. 295, 302, 890 P.2d 777 (1995). A statute may be interpreted by considering the reason for the law, the causes which induced the legislature to enact the law, and the policy considerations behind the law. *Cragun v. Nevada Pub. Employees' Ret. Bd.,* 92 Nev. 202, 205, 547 P.2d 1356 (1976).

In Nevada, state exemption statutes are liberally and beneficially construed. *See, In re Turner,* 186 B.R. 108, 113 (9th Cir. BAP 1995) (state exemption statutes are to be liberally construed given their manifest purpose). The historical purpose of exemptions in Nevada is to protect a debtor by permitting him to retain the basic necessities of life so that he and his family will not be left destitute. *See* Nev. Const. art. I, § 14 ("[t]he privilege of the debtor to enjoy the necessary comforts of life shall be recognized by ... exempting a reasonable amount of property from seizure or sale").

While there is no legislative history suggesting the purpose for Nev.Rev. § 21.090(1)(k),[1] it is apparent that it was intended to promote the basic purpose of exemption statutes in general: namely, to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset but to otherwise leave the bankrupt the benefit of his life insurance as a rehabilitative tool. *Burlingham v. Crouse,* 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920 (1913). *See also, Pearl v. Goldberg,* 300 F.2d 610 (2nd Cir. 1962) (holding the trustee only has title to the cash surrender value of a life insurance policy to the extent that the state does not exempt the property).

The Nevada statute follows closely the language of repealed Cal.Civ.Pro. § 690.9(a) which states:

.9 Except as otherwise specifically provided, the property mentioned in Sections 690.1 to 690.29, inclusive, is exempt from execution when claim for exemption is made to the same by judgment debtor or defendant as hereinafter in Section 690.50 provided.

(a) All moneys, benefits, privileges, or immunities, accruing or in any manner growing out of any life insurance if the annual premiums paid do not exceed five hundred dollars ($500), or if they exceed that sum a like exemption shall exist which shall bear the same proportion to the moneys, benefits, privileges, and immunities so accruing or growing out of such insurance that such five hundred dollars ($500) bears to the whole annual premium paid.

*See In re Haddad,* 15 B.R. 903, 905 n. 3 (9th Cir. BAP 1981).

Through the years, it was recognized that the exempt benefits deriving from a $500 annual premium could vary significantly. Such is the situation in the case at bar where policies purchased over more than a 30 year span have cash value to premium ratios ranging from .088 to .010. California remedied this problem in 1982 when the legislature revised the life insurance exemption to "eliminate the 'arbitrary feature of existing law which exempts benefits to the extent represented by a $500 annual premium' and which has 'no relation to the needs of the judgment debtor or the judgment debtor's family.' " *In re Turner,* 186 B.R. 108, 114 (9th Cir. BAP 1995) (quoting Cal.Law Revision Comm'n, Tentative Recommendation Proposing the Enforcement of Judgments Law, at 2082 (Oct.1980)).[2] Unfortunately, the problem still persists in this jurisdiction.

While the Ninth Circuit Court of Appeals in *In re Brostoff,* 611 F.2d 733 (9th

---

1. Generally, unless specially provided for, there is no legislative history available in Nevada prior to 1965. The Assembly adopted a standing rule in 1973 to keep minutes of the meetings of the standing committees. The Senate adopted similar rule in 1977. Some, but not all, standing committees kept minutes of their meetings beginning in 1965.

2. The revision in Section 704.100 in relevant part states:

(a) Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.

(b) The aggregate loan value of unmatured life insurance policies (including endowment and annuity policies) is subject to the enforcement of a money judgment but is exempt in the amount of eight thousand dollars ($8,000). If the judgment debtor is married, each spouse is entitled to a separate exemption under this subdivision, and the exemptions of the spouses may be combined, regardless of whether the policies belong to either or both spouses and re-

Cir.1979), did not address the issues before this court, the bankruptcy court did deal with similar facts prior to the appeal. In *Brostoff*, the debtor listed on his schedule as exempt, pursuant to Cal.Civ.Pro. § 690.9(a), two life insurance policies. *Id.* at 735. One policy had an annual premium of $719.26 with a cash value of $390.74 while the other policy had an annual premium of $2,158.45 with a cash value of $819.46. *Id.* The bankruptcy judge held that the exempt portion of the net cash surrender value was to be determined by "the proportion that $500.00 bears to the aggregate annual premiums of $2877.71." *Id.* at 736.

This court will follow the common-sense approach applied in *Brostoff* because to do otherwise would exempt all individual policies that have less than a $1000 premium. For example, an individual could have one policy with a cash value of $1,000,000 and a premium of $10,000.00 or have ten policies with individual cash values of $100,000 and premiums of $1,000.00. Under the first scenario a debtor would be permitted to exempt only $100,000 while under the second scenario the debtor would be permitted to exempt $1,000,000 because none of the individual policy premiums exceeded $1000. Clearly, this is an inequitable windfall not anticipated by the statute.

It would be unfair to conclude that Mr. and Mrs. Bower are not entitled to individually assert an exemption in life insurance policies of the other simply because 11 U.S.C. § 522(m) states that "this section shall apply separately with respect to each debtor in a joint case." Mr. and Mrs. Bower have been married for over thirty years, living in only Nevada and California which are community property states. Mr. and Mrs. Bower are entitled to individually assert an exemption to the life insurance policies of the other because the premiums were paid with community

property causing any cash value to be community funds to which each had a fifty percent interest. *See Stojanovich v. Stojanovich,* 86 Nev. 789, 476 P.2d 950 (1970) (recognizing, in a divorce, life insurance as community property).

Applying these principles to the case at bar, the debtors are each entitled to an exemption of $1,000 individually and may exercise that exemption on the life insurance policies of the joint debtor spouse. Accordingly, the debtors are entitled to exempt that portion of the money growing out of the life insurance that the statutorily proscribed maximum premium of $1,000.00 bears to the whole annual premium. In other words, the Debtors are entitled to 2000/5960.81 × 100, or 33.55% of the proceeds (the premium of $29.00 on the policy held by Mrs. Bower was added to the denominator). This results in a total exemption of $45,045.49 and the bankruptcy estate is entitled to $89,218.27 (the cash value of $1,000 on the policy held by Mrs. Bower was added to the total cash value, result $134,263.76). For practical reasons and fairness, the Debtors may select which policies they will surrender to the trustee, provided those retained do not exceed the allowed exemption, or, they may make appropriate arrangements for the present distribution of the estate's share of the cash surrender value.

### CONCLUSION

Pursuant to the above calculations and aforementioned reasons, the Court orders the Trustee's Motion for Summary Judgment Regarding the Life Insurance Policy Exemption **GRANTED IN PART,** exempting life insurance in the amount of $45,045.49 under Nev.Rev.Stat. § 21.090(1)(k).

---

gardless of whether the spouse of the judgment debtor is also a judgment debtor under the judgment. The exemption provided by this subdivision shall be first applied to policies other than the policy before the court and then, if the exemption is not exhausted, to the policy before the court. Cal.Civ.Pro. § 704.100.